IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| DOMENICANGELO L. D'ANGELLA, <br><br> Plaintiff, <br><br> v. <br><br> AUTOMATED BUSINESS POWER, INC., <br><br> Defendants. | Civil Action No. 11-CV-00487 AW |

**MEMORANDUM OPINION**

Plaintiff Domenicangelo L. D'Angella brings this action against Defendant Automated Business Power, Inc. D'Angella asserts a claim under ERISA, along with pendent state law claims for breach of contract and violation of the Maryland Wage Payment and Collection Act. Presently pending before the Court is Defendant's Partial Motion to Dismiss. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons that follow, the Court **GRANTS** Defendant's Partial Motion to Dismiss.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In October 2008, Plaintiff Domenicangelo L. D'Angella started working for Defendant Automated Business Power, Inc. ("Automated"). On or about October 24, 2008, Automated and D'Angella entered into an Employment Agreement ("Agreement"). The Agreement provided for an employment term of five years. (Doc. 1-1, ¶ 1a.) The Agreement also provided that D'Angella could participate in bonus and incentive plans subject to certain requirements. *Id.* ¶ 3a. One such

requirement conditioned D'Angella's eligibility for a bonus ("Bonus") on his "render[ing] services to the Company through December 31 of *each* year." *Id.* (emphasis added).

On or about October 24, 2008, Defendant established an Employee Stock Ownership Plan ("ESOP"). The ESOP provided that one had to determine the allocation of benefits ("Stock Benefits") under the ESOP on the basis of a "Plan Year." (Doc. 6-1, § 3.06(a).) The ESOP defines Plan Year as "a twelve (12) consecutive month period beginning on January 1 of each year and ending on the following December 31. *Id.* § 1.56. The ESOP provides that D'Angella would lose eligibility for benefits in a given Plan Year if he "Separate[d] from Service during a Plan Year (and does not return to service during that Plan Year)." *Id.* § 3.06(c).

On November 5, 2010, Automated terminated D'Angella's employment. On February 23, 2011, D'Angella filed a Complaint against Automated. (Doc. 1.) Count III of the Complaint asserts a claim under the Maryland Wage Payment and Collection Act ("Wage Act").

Automated filed a Partial Motion to Dismiss on April 4, 2011. (Doc. 6.) Therein, Automated urges this Court to dismiss Count III of the Complaint on the ground that neither the Bonus nor the Stock Benefits constitutes a wage within the meaning of the Wage Act.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need satisfy only the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Compare Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), *with Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007). These cases clarify that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In addressing a motion to dismiss, a court should first review a complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1954. In its determination, the court must construe all factual allegations in a light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

### III. LEGAL ANALYSIS

In pertinent part, the Wage Act provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment . . . ." Md. Code Ann., Labor and Employment, § 3-505(a) (LexisNexis 2008). The Wage Act defines wages as "all compensation that is due to an employee for employment," including "a bonus" and "any other remuneration promised for service." *Id.* § 3-501(c)(1)(i), (v). The Maryland Court

of Appeals ("Court of Appeals") has construed this definition to mean that the employer must have promised the employee the payment as compensation for services for the payment to qualify as a wage. *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 671–72 (Md. 2001).

An employer promises an employee compensation for services only where an employee fulfills all the conditions required to earn the compensation. *Catalyst Health Solutions, Inc. v. Magill*, 995 A.2d 960, 961–62 (Md. 2010). In *Catalyst Health*, the Court considered whether an employer promised unvested stock options for services where (1) the employer conditionally granted the stock options pursuant to an unambiguous agreement and (2) the employee failed to fulfill the agreement's conditions. 995 A.2d at 962. The employee (Magill) acquired 60,000 stock options from his employer ("Catalyst Health"). *Id.* at 964. The agreement under which Catalyst Health granted the stock options provided that the stock options vested no earlier that April 16, 2006. *Id.* Catalyst Health fired Magill on April 5, 2011 and blocked his brokerage account. *Id.* at 964–65. On these facts, the Court of Appeals held that "the conditionally granted unvested incentive stock options were not wages under the Wage Act." *Id.* at 961. The Court of Appeals reasoned that Mr. Magill failed to fulfill the continued employment service condition that the agreement to which assented set forth. *Id.* at 961–62.

*Catalyst Health* is not entirely without exception. The Court of Appeals has qualified the rule that an employee must fulfill all the conditions required to earn compensation for the employer to promise the compensation for services. *Medex v. McCabe*, 811 A.2d 297, 305 (Md. 2002). The *Medex* court considered the following issue: "whether incentive fees that are a part of the employee's promised compensation for work performed, but are not yet due for payment at the time of the employee's resignation, must be paid, despite an express term in the employment

4

contract to the contrary." 811 A.2d at 301. In *Medex*, the employer ("Medex") agreed to pay the employee ("McCabe") incentive fees pursuant to an incentive compensation plan. *Id.* at 300. The plan conditioned receipt of the incentive fees on three conditions: (1) meeting sales targets; (2) being an employee at the end of the end of the fiscal year; and (3) being employed at the time of actual payment. *Id.*; *see also Catalyst Health*, 995 A.2d at 970 (thus interpreting *Medex*). The fiscal year ended on January 31, 2000, and McCabe resigned four days thereafter. *Id.* at 300–01. The plan scheduled payments to occur on March 31, 2000. *Id.* At that time, Medex refused to pay McCabe incentives under the plan, arguing that McCabe failed to fulfill the condition of being employed at the time of actual payment. *See id.* at 301. The Court of Appeals rejected this argument, holding that the incentive fees in dispute constituted wages under the Wage Act. *Id.* at 302–03. In so holding, the Court of Appeals emphasized two factors. One, McCabe met the sales targets that the plan required him to meet. *See id.* at 300, 302. In other words, "the incentive fees were *related directly* to sales" that McCabe made. *Id.* at 302 (emphasis added). Two, McCabe remained employed with Medex through the end of the applicable fiscal year. *See id.* at 302; *see also Catalyst Health*, 995 A.2d at 970. Thus expounded, *Medex* proposes that the incentives at issue had effectively vested at the end of the fiscal year; hence the condition that McCabe be employed at the time of payment was immaterial. *See id.* 301–02; *see also Catalyst Health*, 995 A.2d at 970.

The Stock Benefits in dispute do not constitute wages under the Wage Act. One cannot meaningfully distinguish this case's facts from *Catalyst Health*'s. Here, like *Catalyst*, Automated granted the Stock Benefits pursuant to an unambiguous agreement (i.e. the ESOP). Likewise, Automated conditioned eligibility for the Stock Benefits on D'Angella's remaining employed with Automated for a specified length of time. Moreover, just as Catalyst Health terminated

Magill before he worked long enough for his stock options to vest, so did Automated terminate D'Angella before he worked throughout the Plan Year. Thus, as in *Catalyst*, D'Angella failed to fulfill the continued employment service condition that the ESOP unambiguously sets forth. This being so, Automated did not promise the Stock Benefits to D'Angella for his services. Accordingly, the Stock Benefits are not wages for the purposes of the Wage Act.[1]

Nor does the Bonus in question constitute a wage under the Wage Act. D'Angella does not dispute that he failed to satisfy the Agreement's requirement that he render services to Automated through the end of the relevant year. Therefore, the issue is whether the exception that the Court of Appeals enunciated in *Medex* salvages his Wage Act claim in relation to the Bonus.

One can readily distinguish the facts in *Medex* from the facts in this case. Here, unlike *Medex*, D'Angella did not work for Automated at the end of the fiscal year. Furthermore, contrary to the incentive plan in *Medex*, the Agreement does not provide that D'Angella must meet sales targets to be eligible for the Bonus. Rather, the Agreement entitled D'Angella to a "bonus based on 1% of the outstanding invoices [that D'Angella collected] each fiscal year" provided that he render services to Automated through the entire fiscal year. (Doc. 1-1, ¶ 3(a).) In other words, the Agreement uses the task of collecting invoices to determine the amount of the bonus, not to determine eligibility for it. This contrasts with the incentive plan in *Medex*, in which the incentive fees related directly to sales that McCabe made during the defined fiscal year. Here, dissimilarly, the Bonus did not directly relate to the invoices because D'Angella could have collected the Bonus irrespective of the amount of invoices that he collected. Accordingly, the Bonus is not a wage under the Wage Act.

---

[1] Automated terminated D'Angella in 2010. Therefore, this analysis applies to only the Stock Benefits that were scheduled to vest at the end of the 2010 Plan Year. The Court's holding does not apply to any Stock Benefits that might have vested in any prior year (i.e. 2008 and/or 2009).

D'Angella's counterarguments are unpersuasive. D'Angella insists that *Catalyst* does not control the outcome in this case because the employee in *Catalyst* was an at-will employee who quit. This argument reflects a misreading of *Catalyst*; the employer in Catalyst Health fired the employee. 995 A.2d at 964–65. Therefore, contrary to D'Angella's arguments, *Catalyst* proposes that unvested stock options are not wages under the Wage Act even where an employer's termination of an employee precludes him from fulfilling a continued employment service condition.

Alternatively, D'Angella argues that policy considerations justify a different outcome. D'Angella posits that "employers can easily evade the requirements of the Wage Act in any situation where an employee must remain employed through a particular date." (Doc. 8, at 4–5.) Specifically, D'Angella hypothesizes that "the Wage Act would never apply to a situation where an employee is terminated one day before he/she would otherwise satisfy a vesting date—even if such termination was a violation of a binding agreement . . . ." *Id.* at 5.

This argument is unavailing for several reasons. The Court of Appeals expressed awareness of this scenario in *Medex*. 811 A.2d at 305. Nevertheless, the Court of Appeals later held in *Catalyst* that stock options are not wages where, as here, the employee fails to fulfill a continued employment service condition on which their vesting depends. Furthermore, D'Angella's policy argument overlooks the countervailing policy interest in respecting contractual terms for which arm's-length parties have bargained. *See, e.g.*, *Anne Arundel County v. Hartford Accident and Indem. Co.*, 621 A.2d 427, 431–32 (Md. 1993) (citing cases). Finally, the Court's holding would not necessarily preclude contractual employees from arguing that such bonuses or stock benefits constitute a component of damages in breach of contract actions. *See Scully v. US WATS, Inc.*, 238 F.3d 497, 507 (3rd Cir. 2001) (citations omitted).

The preceding analysis shows that Automated never promised D'Angella the Stock Benefits or the Bonus for his services. Therefore, the Stock Benefits and Bonus are not wages under the Wage Act.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Partial Motion to Dismiss. (Doc. 6.) Consequently:

- The Court dismisses Plaintiff's claim under the Wage Act in relation to the Bonus *with prejudice*; and
- The Court dismisses Plaintiff's claim under the Wage Act in relation to the Stock Options for the 2010 Plan Year *with prejudice*.

An Order consistent with this Memorandum Opinion will follow.

| September 29, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |